Argued and submitted September 4, affirmed on petition and cross-petition October 23, reconsideration denied December 18, 1991, petition for review pending 1992

Alice P. BLATT,
Myron L. Scott,
East Portland District Coalition,
and East County Coordinating Committee,
*Respondents - Cross-Petitioners,*

*v.*

CITY OF PORTLAND,
*Petitioner - Cross-Respondent,*

*and*

COLUMBIA CORRIDOR ASSOCIATION,
and Common Ground: The Urban Land Council of Oregon,
*Respondents - Cross-Respondents.*

(LUBA 90-152; CA A70654)

819 P2d 309

Kathryn Beaumont Imperati, Senior Deputy City Attorney, Portland, argued the cause and filed the brief for petitioner - cross-respondent.

J. Richard Forester, Portland, argued the cause and filed the brief for respondents - cross-petitioners.

Steven R. Schell, Portland, waived appearance for respondent - cross-respondent Columbia Corridor Association.

No appearance for respondent - cross-respondent Common Ground: The Urban Land Council of Oregon.

Before Richardson, Presiding Judge, and Rossman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

The City of Portland petitions and respondents[1] cross-petition for review of LUBA's decision remanding the city's adoption of the Columbia South Shore Natural Resource Management Plan (NRMP). The dispositive issue is whether Statewide Planning Goal 5 is applicable to the city's decision, as respondents argue and LUBA concluded, or whether, as the city argues, its decision was made under an acknowledged land use regulation, and, therefore, no independent demonstration of compliance with the statewide goals was required.[2] *See, e.g., Foland v. Jackson County,* 311 Or 167, 807 P2d 801 (1991).

■      The NRMP was adopted pursuant to what the parties call the city's "E zone regulations," which are deemed acknowledged under ORS 197.625. Section 33.635.100.E of the city code, one of the E zone provisions, states, in material part:

"A natural resource management plan may be adopted if it is found that:

"1.   The plan is consistent with the purpose of the E zone; and

"2.   The plan meets the approval criteria contained in Section 33.635.080, Environmental Review Approval Criteria, except Subsections A.3., B.4., and C.2.e." .

Section 33.635.080, in turn, incorporates other E zone provisions that refer, *inter alia,* to Goal 5 and to resource inventories and ESEE analysis of the kind required by Goal 5. The inventory and the ESEE analysis for the NRMP were derived from those developed in connection with the earlier enactment of what the parties call the city's "mapping ordinance." However, in *Columbia Steel Castings Co. v. City of Portland,* 104 Or App 244, 799 P2d 1142 (1990), *rev allowed*

---

[1] We refer by that word to respondents Blatt, Scott, East Portland District Coalition and East County Coordinating Committee. The other respondents have not appeared.

[2] LUBA also concluded that the city had not demonstrated compliance with Goal 5, and it therefore remanded the decision. That conclusion is not separately challenged, as distinct from LUBA's determination that the goal applies to the decision. However, the city does argue that compliance with the goal would be established, *ipso facto,* if the Supreme Court agrees with its position in *Columbia Steel Castings Co. v. City of Portland, supra.*   .

311 Or 261 (1991), we concluded that the Goal 5 process that the city followed in adopting that legislation violated the goal. Therefore, the mapping ordinance is unacknowledged. Although the mapping ordinance is not, *per se,* an approval criterion for the NRMP, its Goal 5 framework is the only vehicle by which the city can claim here to have satisfied section 33.635.080 and other city provisions that relate to inventories and ESEE analysis.

The city argues, however, that the E zone regulations' references to inventories and ESEE analysis are *just* that; that they are informational at most and are not approval criteria; and that the acknowledged E zone regulations, in themselves, contain the applicable criteria for the adoption of the NRMP, and those do not include the inventories and ESEE analysis mentioned in the city provisions or required by Goal 5. LUBA rejected that argument. It reviewed the city provisions and concluded that the "resource inventory and ESEE analysis referred to in [them] as the basis for the application of the E-zone regulations to specific resource sites are also the inventory and ESEE analysis required by Goal 5." We agree. We conclude that the E zone regulations contain an internal requirement that their application to particular sites comply with Goal 5. *See 1000 Friends of Oregon v. Jackson Co.,* 79 Or App 93, 718 P2d 753, *rev den* 301 Or 445 (1986).

The city also argues:

> "[T]he likelihood of an imminent decision by the Supreme Court in the *Columbia Steel Castings* case underscores the potential futility of requiring the NRMP to comply with Goal 5. The Supreme Court heard oral argument in *Columbia Steel Castings* on May 8, 1991 and a decision is expected at any time. [If the] Supreme Court agrees with the city that the Mapping Ordinance complies with Goal 5 and reverses the Court of Appeals, the case will end and a final appellate judgment will issue. Issuance of a final appellate judgment will render the E zone mapping ordinance acknowledged for compliance with Goal 5. (ORS 197.625) This will render moot the Goal 5 issues in this case * * *. Under these circumstances, requiring the City to redo [a]n inventory and ESEE analysis for the Columbia South Shore as part of the NRMP process while the *Columbia Steel Castings* case is pending

imposes a duplicative and potentially unnecessary burden on the City."

ORS 197.855(1) requires *this* court to complete review of LUBA cases within 91 days after argument. The letter of that requirement apparently does not extend to the Supreme Court when it conducts review of LUBA cases.[3] ORS 197.855(2)(b), (3) and (4), establish standards by which we, in our discretion, may grant continuances to extend the 91-day period for our decisions. Because the central issue in this case may be affected by the holding in *Columbia Steel Castings Co. v. City of Portland, supra,* we have considered invoking that discretion here, for reasons along the lines suggested by the city, and extending the time for our decision of this case until the Supreme Court decides *Columbia Steel Castings.*

For a number of reasons, however, we have decided not to do so. We do not share the city's optimism that the Supreme Court's decision is necessarily to be expected in the near future. *See* note 3, *supra.* Moreover, it is not our usual practice, even when there is no statutory time limit, to delay the decision of appeals because cases presenting similar issues are pending on review. If, as the city hypothesizes, the Supreme Court's decision in *Columbia Steel Castings* eventually "moots" the Goal 5 issue in this case, the intervening unnecessary hardship and duplication that the city apprehends would appear to us to be preventable. A petition for review to the Supreme Court, pointing out the overlap between this case and *Columbia Steel Castings,* is one potential method for avoiding the interim effects that the city anticipates.

■ We reject the city's first assignment. In its second, it ascribes error to LUBA's failure to decide certain issues, and some of respondents' assignments in their cross-petition are

---

[3] In few, if any, of the LUBA cases decided by the Supreme Court has the decision been issued within any discernible time line that could be consistent with the statutory admonition that "time is of the essence in reaching final decisions in matters involving land use." ORS 197.805. To illustrate, we decided *Perkins v. City of Rajneeshpuram,* 68 Or App 726, 686 P2d 369 (1984), on June 27, 1984. The Supreme Court heard argument on December 12, 1984, and its decision was issued on September 17, 1985. 300 Or 1, 706 P2d 949 (1985).

to similar effect. The arguments appear to be based on the requirement of ORS 197.835(9)(a):

> "Whenever the findings, order and record are sufficient to allow review, and to the extent possible consistent with the time requirements of ORS 197.830(14), the board shall decide all issues presented to it when reversing or remanding a land use decision described in subsections (2) to (7) of this section."

LUBA explained that its remand on the principal issue made the others non-dispositive and also required the city to reconsider them on remand in the first instance. Therefore, those issues did not have to be addressed in the present appeal.

We agree with LUBA. We said in *Perkins v. City of Rajneeshpuram,* 68 Or App 726, 686 P2d 369 (1984), *aff'd as modified,* 300 Or 1, 706 P2d 949 (1985):

> "A statement by LUBA that an issue is not relevant under the facts or is subsumed within or rendered immaterial by other issues is a decision of the issue within the meaning of the statute. We do not agree with respondents that the decision required by ORS 197.835(9) must take the form of a yes or no answer to each of the parties' contentions * * *." 68 Or App at 733.

The remaining issues that respondents' cross-petition raises require no discussion.

Affirmed on petition and on cross-petition.