Argued and submitted April 17, affirmed June 3, reconsideration denied August 27,
petition for review denied October 27, 1992 (314 Or 573)
See 115 Or App 32 (1992) for opinion on attorney fees

Leslie MILLER,
*Petitioner,*

*v.*

CITY OF DAYTON,
*Respondent.*

(LUBA 91-170; CA A73904)

833 P2d 299

Thomas G. P. Guilbert, Portland, argued the cause and filed the brief for petitioner.

Melanie K. Hantze, Newberg, argued the cause for respondent. With her on the brief were Stan Bunn, James E. Green and Stan Bunn & Associates, Newberg.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioner seeks review of LUBA's dismissal of his appeal from the City of Dayton's decision to enlarge a basketball court in Courthouse Square Park. The park is listed on the National Register of Historic Places. However, the city has not designated or regulated it as a Goal 5 resource in its comprehensive plan and land use regulations as originally acknowledged or as revised for periodic compliance review in 1986. LUBA concluded that the decision was not reviewable as a "land use decision" defined in ORS 197.015(10)(a) and that it also did not come within LUBA's jurisdiction under the "significant impact" test. We affirm.

The specific provisions in the plan and the regulations that petitioner contends are applicable to the decision clearly are not applicable. LUBA did not err in rejecting the arguments that those provisions had to be applied and, thus, that the city had made or had to make a land use decision by applying them. The more troublesome point that petitioner makes, however, concerns matters that are not included in the plan and regulations. He contends that the city should not be able to evade review through the syllogism on which its argument and LUBA's opinion rest: (1) because the plan is acknowledged, Goal 5 and LCDC's rules do not apply directly to the city's decision; (2) because the park was erroneously, in petitioner's view, excluded from regulation as a Goal 5 resource in the city's own legislation, there is nothing in the plan or the regulations that can be applied to protect it; (3) therefore, because neither the goal, the plan nor the land use regulations are applicable, the city may change the character of the park without making or being subject to review of a land use decision.

Although petitioner's argument has facial appeal, we are unable to agree with it. The most analogous case that we find is *Urquhart v. Lane Council of Governments*, 80 Or App 176, 721 P2d 870 (1986), where the local government had amended its comprehensive plan to redesignate an area from a park and open space designation to a more intensive non-resource use. The area had not been designated as a Goal 5 resource in the acknowledged plan. However, LUBA concluded that the local government's findings in support of the amendment had to and did not demonstrate that the site

should not be added to the Goal 5 inventory as part of the amendment process. We disagreed, stating:

"[W]e said in *1000 Friends of Oregon v. Jackson Co.*, [79 Or App 93, 718 P2d 753 (1986)]:

" '* * * [A] plan amendment *could* affect provisions of the plan that it does not directly change in such a way that they will have an application which is at odds with the goals and which they did not have at the time of acknowledgment. * * *' 79 Or App at 98. (Emphasis in original.)

"However, the issue in this case differs from the one in *Jackson Co.* Here, the affected area was excluded from the inventory before the amendment was enacted, and the amendment does not affect the inventory. Indeed, the converse seems to be true, *i.e.*, the absence of the area from the inventory is what makes it possible for the new designation to be attached to the area without a Goal 5 resolution of the conflict between the area's open space use and the University/Research use called for by the amendment. *See* OAR 660-16-000(5)(a). LUBA's opinion posits that the existing designation on what is referred to as the 'diagram,' the actual use of the area and certain other *existing* factors militate in favor of the inclusion of the area on the inventory; however, none of those factors is a consequence of the amendment. Those factors may demonstrate that, for reasons unrelated to the amendment, circumstances have changed since the acknowledgment. If so, ORS 197.640 to 197.647 make LCDC's periodic review the only method for correcting goal noncompliance that results from changes in circumstances after acknowledgment, when the noncompliance is not the product of an amendment to an acknowledged plan or land use regulation.

"The factors to which LUBA points may also indicate that the area should have been included on the inventory at the time of acknowledgment. If so, neither LUBA nor we can do anything about that now." 80 Or App at 180-81. (Emphasis in original; footnotes omitted.)

*See also Mill Creek Glen Protection Assoc. v. Umatilla Co.*, 88 Or App 522, 746 P2d 728 (1987). Although the issues here and in *Urquhart* arise in very different procedural postures, they present essentially the same problem. In both cases, neither Goal 5 itself, LCDC's implementing regulations nor anything in the local plan and regulations can have any bearing on the decision.

Petitioner also argues that *Byrd v. Stringer*, 295 Or 311, 666 P2d 1332 (1983), on which LUBA relied for the proposition that the statewide goals do not apply directly to land use decisions by jurisdictions with acknowledged land use legislation, has been legislatively abrogated by ORS 197.646, which provides, in part:

"(1) A local government shall amend the comprehensive plan and land use regulations to implement new or amended statewide planning goals, commission administrative rules and land use statutes when such goals, rules or statutes become applicable to the jurisdiction. Any amendment to incorporate a goal, rule or statute change shall be submitted to the department as set forth in ORS 197.610 to 197.625.

"* * * * *

"(3) When a local government does not adopt comprehensive plan or land use regulation amendments as required by subsection (1) of this section, the new or amended goal, rule or statute shall be directly applicable to the local government's land use decisions. The failure to adopt comprehensive plan and land use regulation amendments required by subsection (1) of this section may be the basis for initiation of enforcement action pursuant to ORS 197.319 to 197.335."

That statute was enacted as Oregon Laws 1991, chapter 612, section 7, and it is worthy of note that its effective date was after, not only the *Byrd* decision, but also *Foland v. Jackson County*, 311 Or 167, 807 P2d 801 (1991), where the court most recently reiterated the principle stated in *Byrd*.

It is unnecessary for us to construe ORS 197.646 in this case. Even assuming that it has the general effect that petitioner ascribes to it, he points to no new or amended goal or rule provisions promulgated since 1986 that might have any bearing on the decision in question. LCDC amended its Goal 5 implementing rules, OAR 660-16-000 *et seq*, in 1990. However, our review of the amended rules discloses nothing that could have any different or greater application here than would the rules as they stood in 1986.

■ ■ The point at which petitioner's argument really seems aimed is that ORS 197.646 requires the city to amend its legislation to include the park as a Goal 5 resource, not because of any change in the goal and the rules, but because

petitioner considers that the city did not comply with the goal and rules in the first place and should be required to do so now.[1] However, whatever ORS 197.646 may mean, it does not mean that. It relates only to the application of *new* goal and rule provisions and does not purport to rectify an antecedent failure to comply with goal and rule provisions that were in effect at the time of the noncompliance.

Petitioner also contends that, along with other problems, the record transmitted by LUBA to us was incomplete, most notably in that the city's comprehensive plan was not included. Petitioner asked that we request that LUBA transmit the rest of the record, which we have done, and it has complied. Our review of the entire record does not alter the conclusions stated.

■ Petitioner finally takes issue with LUBA's conclusion that the decision does not come within its jurisdiction under the "significant impact" test and that LUBA erred in not transferring the case to circuit court. Petitioner had not filed a motion to transfer pursuant to OAR 661-10-075(10); *see* ORS 19.230. We find no error in either particular.

Affirmed.

---

[1] The argument is also, in part, a product of the fact that petitioner focuses on the original 1979 plan rather than the 1986 periodic revision. Petitioner points out that implementing rules were first adopted after 1979. However, they were adopted before 1986. The fact that petitioner focuses on the original, rather than the revised, plan may be due to problems with the record that were more the city's fault than his. However, that does not bolster the merits of his argument. Petitioner does not assert that the problems with the record, about which more will be said, warrant reversal in themselves.