Submitted on record and briefs July 22, affirmed August 26, 1992

Logan RAMSEY,
*Respondent,*

*v.*

CITY OF PORTLAND,
*Petitioner,*

*and*

FRIENDS OF FOREST PARK,
*Intervenor - Respondent below.*

(LUBA 91-215; CA A75199)

836 P2d 772

Adrianne Brockman, Deputy City Attorney, Portland, filed the brief for petitioner.

Logan Ramsey, Portland, filed the brief *pro se.*

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

The City of Portland seeks review of LUBA's remand of its "interim forest review" ordinance. PCC chapter 33.453. We affirm.

The city's comprehensive plan and land use regulations were acknowledged in May, 1981. Earlier that month, LCDC had promulgated its Goal 5 implementing rule, OAR 660-16-000 *et seq*, but it was not yet applicable to the city's legislation at the time of the original acknowledgment. However, compliance with the rule is required as part of the periodic review process, which the city is presently undergoing. As part of its effort to achieve compliance, the city has enacted or is in the process of enacting a number of resource protection plans for particular geographical areas. Some of the plans are acknowledged, but some areas do not yet have acknowledged plans. *See Columbia Steel Castings Co. v. City of Portland*, 104 Or App 244, 799 P2d 1142 (1990), *rev allowed* 311 Or 261 (1991).

As LUBA summarized from the city's findings, the challenged ordinance was enacted "to ensure compliance with Goal 5 in circumstances where the city's Goal 5 planning process has yet to be completed, or where it has been reversed or remanded on appeal." The ordinance applies only to areas that do not have acknowledged "environmental zone maps." We understand that to mean that the operation of the ordinance is limited to parts of the city for which it does not yet have legislation that satisfies the implementing rule. The essential mechanism of the ordinance is to make the city's comprehensive plan goal 8 and policies under it the approval standards for particular land use decisions in the areas subject to the ordinance. The plan goal and policies are acknowledged. The principal provision on which the issues in this case turn is plan policy 8.14, which provides that the city is to

"[c]onserve significant natural and scenic resource sites and values through a combination of programs which involve zoning and other land use controls, purchase, preservation, intergovernmental coordination, conservation, and mitigation. Balance the conservation of significant natural resources with the need for other urban uses and activities through evaluation of economic, social, environmental, and energy consequences of such actions."

According to the city, that policy embodies a process that is functionionally identical to that of the Goal 5 rule, and its application to requests for land use approvals would serve necessary protective purposes until the city develops legislation that fully complies with the rule.

LUBA reviewed the ordinance pursuant to ORS 197.835(5):

"The board shall reverse or remand an amendment to a land use regulation or the adoption of a new land use regulation if:

"(a) The regulation is not in compliance with the comprehensive plan; or

"(b) The comprehensive plan does not contain specific policies or other provisions which provide the basis for the regulation, and the regulation is not in compliance with the statewide planning goals."

LUBA reasoned that plan goal 8 and policy 8.14 do not "provide a basis for requiring application of an equivalent of the Goal 5 planning process to individual development applications." Therefore, it held the policy does not "provide the basis" for the ordinance and that the ordinance is not affirmable under the first prong of the ORS 197.835(5)(b) test.[1] LUBA then held that the ordinance does not meet the second part of the test, because it does not comply with the statewide goals. Relying on *Collins v. LCDC*, 75 Or App 517, 707 P2d 599 (1985), LUBA concluded that Goal 5 and the implementing rule are not satisfied by a case-by-case implementation approach, but require a jurisdiction-wide planning, program selection and regulatory process.

The city's argument to us is difficult to follow. Although, at times, it contends that plan policy 8.14 is independently sufficient to serve as the basis for the ordinance and for the case-by-case approach in it, the city's overriding theme, as stated in its brief, is:

"The City interprets Policy 8.14 to have the same process and procedural requirements as OAR 660-16-000, *et seq.*

---

[1] LUBA did not discuss or apply ORS 197.835(5)(a), and neither does the city in its argument. Although the city disagrees with the conclusions that LUBA reached, it does not challenge the fundamental methodology by which LUBA applied ORS 197.835(5). We therefore do not address that question.

"* * * * *

"The City takes the position that this policy places the same process or analytical requirements on the City as Statewide Goal 5 Rule, OAR 660-16-000 because the language is similar. * * * Therefore, the interim ordinance complies with the applicable portions of Statewide Goal 5 and implementing Rule. LUBA apparently accepted this argument because it held that a Statewide Goal and Rule cannot be applied on a case by case basis." (Citation omitted.)

In short, the city construes its plan policy as being a clone of the Goal 5 rule. There is little doubt, in the light of *Clark v. Jackson County*, 313 Or 508,.836 P2d 710 (1992); *see also Cope v. City of Cannon Beach*, 115 Or App 11, 836 P2d 775 (1992), that the city is free to interpret its own legislation as having been intended to satisfy the rule. There is no doubt, however, that intending that to be so does not make it so. Notwithstanding the city's self-proclamation of compliance, the question of whether its ordinance[2] satisfies the Goal 5 rule obviously depends as much on what the rule means as on the meaning of the city's legislation. Whether the case-by-case approach under the ordinance .is consistent with the requirements of the rule is a question of state law.

The effect of the city's interpretation of plan policy 8.14 and its argument is to turn the two tests under ORS 197.835(5) into one, for purposes of this case. The role that the policy plays in the ordinance is nothing more than an attempted duplication of the Goal 5 implementing rule, and it cannot purport to serve as an independent "basis for the regulation," if it operates in a way that the implementing rule would not operate and would not permit. The only question, therefore, is whether the city's legislation complies with the statewide planning goals and, specifically, whether the city's case-by-case application of the ordinance is consistent with Goal 5 and the implementing rule.

---

[2] The city emphasizes the fact that the plan policy is acknowledged. However, the ordinance is not, and the issue here is whether the ordinance complies with the statewide goals. The acknowledged status of the policy is irrelevant to whether the ordinance can make the policy determinative of particular land use decisions, consistently with Goal 5 and the implementing rule. Nothing in the plan policy, standing alone, establishes the application that the ordinance prescribes for it. *See 1000 Friends of Oregon v. Jackson Co.*, 79 Or App 93, 718 P2d 753, *rev den* 301 Or 445 (1986).

We agree with LUBA that, under *Collins v. LCDC, supra,* and the plain meaning of Goal 5 and the rule, the answer must be no. One of the overriding objectives of the goal and the rule is to require resources to be identified and comprehensive regulatory programs to be developed before case-specific decisions about resource use are made. Under the city's contrary view, resources could well be irrecoverably squandered in response to particular permit applications before protective choices could be made or programs developed. *See Miller v. City of Dayton,* 113 Or App 300, 833 P2d 299 (1992); *Urquhart v. Lane Council of Governments,* 80 Or App 176, 721 P2d 870 (1986).

The city argues that *Collins v. LCDC, supra,* is distinguishable, because it was an acknowledgment case and the issue was whether Jacksonville's initial land use legislation complied with Goal 5 and OAR 660-16-000 *et seq.* The city argues:

> "What the Court said [in *Collins*] is that in order to Acknowledge the City's Plan, LCDC must find the Plan satisfies the requirements of the Goal and Rule. The Court did not say the Goal and Rule could not be applied on a case by case basis prior to Acknowledgment on the Goal or Rule."

The logic of *Collins*, however, is that the goal and rule require a planning process and that process cannot be displaced by an *ad hoc* adjudicative approach at the time of acknowledgment or before.

A more effective distinction might be almost the opposite of the one the city makes: Here, unlike in *Collins*, the city's plan and regulations have been initially acknowledged and, as far as we are apprised, the periodic review process has not resulted in any extraordinary constraints on its ability to apply its existing acknowledged legislation.[3] *See* ORS 197.636. Again, however, the logic of *Collins* militates against the case-by-case application of the challenged ordinance, because, by its terms, the ordinance applies only in areas for

---

[3] The city informs us that, for purposes of the periodic review process, it is in compliance with all requirements except that rule. We emphasize that this opinion and LUBA's deal only with whether and how a particular ordinance may be applied. There is no question before us concerning any other limitations on the city's authority to make land use decisions in the affected areas, and we do not consider whether any exist.

which the city is not yet in compliance with the Goal 5 rule. There is no tenable reason why the standard for applying and measuring compliance with the rule in those areas should differ from the standards articulated in *Collins* with respect to an entire city that was not in compliance.

The city also argues that the statewide goals

"do not contain any language authorizing application on a case by case basis, yet the legislature and LCDC made a policy decision that the goals applied to individual decisions until plans were Acknowledged. ORS 197.175(2)(c). If the State can make such a policy to apply the goals on a case by case basis, what precludes the City from doing the same?"

The answer to the city's question is that state law precludes it from doing so, at least with respect to Goal 5 and the implementing rule.

Affirmed.